UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| EDWARD D. MARTIN, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | CASE NO. 9:05CV119 |
| v. | : | |
| | : | JUDGE RON CLARK |
| KLENT TIPTON, | : | |
| | : | |
| *Defendant*. | : | |

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's Motion for Summary Judgment [Doc. # 15]. Plaintiff, Edward Martin, claims that Defendant, Klent Tipton, unlawfully stopped, detained and searched Martin's car. Tipton argues that he is entitled to qualified immunity on all of Martin's claims. Tipton's initial stop of Martin's car was objectively reasonable in light of clearly established law, and so Tipton is entitled to qualified immunity on this issue. However, there are genuine issues of material fact regarding Martin's claim of unlawful detention and search which preclude the court from granting qualified immunity on these claims.

**I. Factual Background**

On April 3, 2005, Martin was traveling south on U.S. 59 between Nacogdoches and Houston. Martin was stopped at 16:19(4:19 P.M.)[1] by Texas State Trooper Klent Tipton in

---

[1]Tipton submitted evidence detailing that because April 3, 2005 was the beginning of daylight savings time, the time on the camera was one hour off. To eliminate confusion, the court will give the time listed on the video – which will be one hour behind the actual time the events took place. The events described are seen on the videotape made by the camera in Tipton's patrol car.

Cleveland, Texas, in Liberty County. Tipton alleges that Martin was stopped because he exceeded the posted speed limit. Martin admits that he did exceed the speed limit. At 16:23, Tipton tells Martin that once he does a computer check on Martin's driver's license and tags, Tipton will give Martin a warning for the alleged traffic violation and allow him to leave. At 16:26, the computer check was completed, and Martin's license and tags came back clear. Tipton continued to question Martin and asked for consent to search the vehicle. Martin denied consent at 16:27. At this point, Tipton performed a visual inspection of the car and informed Martin that he was going to call a dog unit to perform an open air search around Martin's car. The canine unit did not arrive until 16:57 – thirty-one minutes after the completed computer check.

       The canine Officer, Will Domilos, read Martin his *Miranda* warnings prior to walking the drug dog around the outside of Martin's vehicle. At 17:02, Tipton and several other officers began searching the interior of Martin's car. During the search, the officers removed from Martin's car his clothes, his duffle bag, and his stereo system from the trunk. Tipton claims some marijuana residue was found in the car. Martin was not arrested and no other drugs or weapons were found. Martin was given a traffic warning and allowed to leave at 18:12. It is undisputed that Martin was not free to leave until this time – one hour and fifty three minutes after the initial stop.

       Based on these events, Martin alleges that he was unlawfully stopped and detained and that his vehicle was illegally searched. Tipton asserts that he is entitled to the defense of qualified immunity.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more

persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Analysis

Martin brings suit against Tipton for alleged violations of Martin's Fourth Amendment rights. 42 U.S.C. § 1983 states that every person who, under color of law, subjects or causes to be subjected, any person within the jurisdiction of the United States "a deprivation of any rights, privileges, or immunities under the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . ." Martin alleges that he was unlawfully stopped and detained and that his vehicle was unlawfully searched. It is not disputed that Tipton was acting under the color of state law at the time of the alleged constitutional violations. Tipton argues that he is immune from suit based on the doctrine of qualified immunity.

Qualified immunity is granted if the defendant's actions were "objectively reasonable" with reference to "clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Evaluating qualified immunity is a two-step process. *Michalik v. Hermann*,

422 F.3d 252, 257 (5th Cir. 2005).  First, the court must determine whether the plaintiff has alleged violation of a clearly established constitutional or statutory right.  *Id.*  Second, if a plaintiff has alleged a violation of a clearly established right, then the court must determine whether the official's conduct was objectively reasonable under the law at the time of the incident.  *Id* at 258.  "The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity."  *Id.* at 258.

## A. Traffic Stop and Detention

Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops are analyzed under the framework announced in *Terry v. Ohio*.  *See U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003).  Under *Terry*, to determine whether a seizure and search are "unreasonable" and in violation of the Fourth Amendment, the inquiry is twofold: (1) whether the Trooper's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879 (1968).

### 1. Initial Stop

Martin admits that he was exceeding the speed limit by at least one mile per hour.  Traveling over the posted speed limit is a violation of Texas law.  Tex. Transp. Code § 545.352(a).  Tipton, therefore, had probable cause to stop Martin, and Tipton's action in stopping Martin was objectively reasonable in light of the clearly established law.  *See Whren v. U.S.*, 517 U.S. 806, 811, 116 S.Ct. 1769, 1772 (1996)(the decision to stop a vehicle is reasonable where the police have probable cause to believe a traffic violation has occurred).  Tipton is entitled to qualified immunity on this claim.

2. Detention After Initial Stop

*a. Clearly Established Law*

The second prong of the *Terry* test focuses on whether or not the continued detention of a person after the initial traffic stop is lawful. It was clearly established at the time of the incident in question that the Constitution is violated when the detention of a person continues after the legitimate justification for the traffic stop has ended unless there is a reasonable suspicion, supported by articulable facts, that a crime is or has been committed. *See U.S. v. Santiago*, 310 F.3d 336, 341-42 (5th Cir. 2002); *U.S. v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999). An officer is constitutionally permitted to request a driver's license, insurance papers, and vehicle registration, as well as run a computer check and issue a citation. *U.S. v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). During a traffic stop, an officer may also ask about the purpose and itinerary of a driver's trip. *U.S. v. Brigham* (*Brigham II*), 382 F.3d 500, 508 (5th Cir. 2004). Such questions may efficiently determine whether a traffic violation has taken place. *Id.*

Nevertheless, investigative methods employed should be the least intrusive means reasonably available to verify or dispel any suspicion in a short period of time. *Grant*, 349 F.3d at 196. "Once a computer check is completed and the Officer either issues a citation or determines that no citation should be issued, the detention should end and the driver should be free to leave." *Santiago*, 310 F.3d at 341-42. "In order to continue a detention after such a point, the Officer must have a reasonable suspicion supported by articulable facts that a crime

has been or is being committed." *Santiago*, 310 F.3d at 341-42.[2]

Martin asserts that once the computer check of his driver's license and license plate revealed no warrants or criminal history, Tipton had no articulable and reasonable suspicion that Martin was engaged in any criminal activity. Therefore, Tipton's detention of him, after the legitimate justification for the traffic stop had ended, exceeded the scope of intrusion allowed under *Terry*. Martin has alleged a violation of a clearly established constitutional right – the right to be free from unreasonable seizures by an officer of the law. *See U.S. v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000)("the basis for the stop was essentially completed when the dispatcher notified the officers about the defendants' clean records, three minutes before the officers sought consent to search the vehicle."); *Dortch*, 199 F.3d at 200 (where the computer check came back negative, and a canine search was performed after the completed check, the Court held that the detention while waiting for the drug dog was unlawful).

### b. Objective Reasonableness of Trooper's Actions

The court must focus on whether Martin has presented sufficient evidence, which, if believed, would overcome Tipton's entitlement to qualified immunity. Martin argues that Tipton lacked any reasonable suspicion regarding criminal activity, so there was no lawful justification for his continued detention for over half an hour while waiting for the drug dog.

Tipton states that his actions were objectively reasonable in light of the clearly established law because a reasonable officer would have thought, even if mistakenly, that the

---

[2]The court notes that a consensual interrogation could follow the end of a valid traffic stop. *See U.S. v. Sanchez-Pena*, 366 F.3d 431, 442 (5th Cir. 2003). Here, there is no evidence that Martin was free to leave after Tipton completed the computer check. Tipton did not issue the warning that he stated he would give to Martin, and in fact, he told Martin to wait until a drug dog arrived.

continued detention of Martin was warranted.  Tipton submits the Affidavit of Lt. Holland to support this argument.  In the Affidavit, Holland opines that Tipton's actions were reasonable under all the circumstances, and that a reasonable officer would have continued to detain Martin.  But this opinion, of necessity, is based upon acceptance of Tipton's personal evaluation of Martin's answers and demeanor, and Tipton's evaluation of how clean an automobile should be.

Martin's answers and demeanor are seen in the videotape.  The evidence must be viewed in the light most favorable to Martin.  In the video of the stop, Martin appears calm and collected.  He does not became angry or raise his voice, and he answers succinctly.  He identifies where he is coming from and where he is going.  Martin discusses his previous employment and appears to try to answer the officer's questions truthfully.  While Martin was not overly cooperative or extremely forthcoming in his answers, his answers and demeanor as seen in the videotape of the incident do not, by themselves, or in conjunction with a messy car, establish, for summary judgment purposes, that a reasonable officer would have had a suspicion of criminal activity sufficient to justify a detention of over thirty minutes while waiting for a dog.

Tipton's counsel stresses information gleaned from Martin's deposition during this case to argue that Martin was not truthful in his answers.  But that information was not, and could not have been, known by Tipton (or by the hypothetical reasonable officer) at the scene.  In evaluating the objective reasonableness of Tipton's actions for summary judgment purposes the court must look only at the facts known at the time of the incident.  And, these facts must be viewed in the light most favorable to Plaintiff.

The factual questions raised by the video are not satisfactorily answered by the

summary judgment evidence. In his deposition, Tipton testified that nearly everything Martin did or said caused suspicion. For example, Martin was suspicious if he answered a question too fast, but if Martin thought about an answer, that was also suspicious. He was suspicious because Martin was calm when he was stopped. However, he admits that being calm is not normally considered an indicator of criminal activity by officers.[3] Thus, Tipton's own testimony raises a question as to the objective reasonableness of his decision to hold Martin.

A jury could find that holding Martin for thirty one minutes while waiting for the drug dog after the clean computer check of his driver's license and license plate was not objectively reasonable. There is a genuine issue of material fact as to whether an objectively reasonable officer, in light of the clearly established law, would have continued the detention to call for a drug dog after finishing the computer check.[4]

**C. Search of Car**

Martin alleges that Tipton unlawfully searched his car, and that during the search, Tipton damaged Martin's car and his audio system. The Fourth Amendment "prohibits a search of the vehicle in the absence of a warrant, with only two exceptions . . . [the officer must have] either the consent of the owner to conduct the search or probable cause to believe the vehicle

---

[3]In fact, the standard litany of reasons for suspicion invariably includes testimony from an officer that a suspect was nervous or evasive. If suspicion exists both when a person is calm and when a person is nervous, then suspicion exists every time a person is stopped.

[4]Tipton cites the court to an unpublished decision for the proposition that an officer is not dilatory in dispelling his suspicions of criminal activity by waiting until after a person refuses consent to call for a drug dog. *U.S. v. Schlieve*, 159 Fed. Appx. 538, 543-44 (5th Cir. 2005). That case, however, is factually very different. That suspect was driving a car owned by a known drug dealer, he was coming from a known drug house, and the passenger was a known criminal. *Id.* at 543. In this case, the officer had no knowledge that Martin had ever engaged in any criminal activity or had ever associated with anyone else who did.

contains contraband or other evidence of a crime." *U.S. v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003). A well-trained drug dog alert is sufficient to create probable cause to conduct a warrantless vehicle search. *See United States v. Zucco*, 71 F.3d 188, 191-2 (5th Cir. 1995). "[T]he use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 837 (2005).

It is undisputed that Martin did not give consent to search the car and that no warrant was obtained. Martin argues that there were insufficient facts to give rise to probable cause, or reasonable suspicion, to warrant further detaining Martin, so that any later search of the car would be unlawful. The law is clearly established that a search following an unlawful detention is also unlawful. *See Dortch*, 199 F.3d at 200. Martin has alleged a violation of a clearly established right.

Tipton argues that the search was objectively reasonable because: (1) an objectively reasonable officer would think the continued detention of Martin was lawful because reasonable suspicion of criminal activity existed, and (2) probable cause existed for the search because the drug dog alerted. Given that there are fact questions involving whether the continuing detention of Martin was objectively reasonable, the court cannot conclude that the later search of the vehicle was objectively reasonable.

## IV. Conclusion

Tipton is entitled to qualified immunity on Martin's claim that the initial stop violated Martin's Fourth Amendment rights.  Genuine issues of material fact, however, preclude the granting of summary judgment in favor of Tipton on Martin's claim for unlawful detention and search.

In its reply brief, Tipton moved to strike certain portions of Martin's Affidavit that was submitted in support of Martin's response.  Because the court did not rely on Martin's Affidavit in reaching the conclusion that genuine issues of material fact exist, this motion is moot.

IT IS THEREFORE ORDERED THAT Defendant's Motion for Summary Judgment Based on Qualified Immunity [**Doc. # 15**] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS FURTHER ORDERED THAT Defendant's Objections to Plaintiff's Summary Judgment Evidence [**Doc. #20**] are **DENIED** as **MOOT**.

So **ORDERED** and **SIGNED** this **28** day of **June, 2006.**

_____
Ron Clark, United States District Judge